UNITED STATES DISTRICT COURT
FILED
MAY - 1 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIMOTHY S.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

22-CV-00288-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 11)

Plaintiff Timothy S.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, Plaintiff's motion (Dkt. No. 5) is denied, and defendant's motion (Dkt. No. 6) is granted.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on February 1, 2018, with an alleged onset date of January 1, 2006. (Administrative Transcript ["Tr."] 193-98).  The claim was initially denied on June 14, 2018.  (Tr. 82-87).  Plaintiff filed a timely request for an administrative hearing before an administrative law judge ("ALJ").  (Tr. 88-107).  On July 24, 2020, a telephone hearing was held by ALJ Gregory Moldafsky, during which Plaintiff participated, with counsel.  (Tr. 31-54).  A vocational expert ("VE") also testified at the hearing.  The ALJ issued an unfavorable decision on September 29, 2020.  (Tr. 15-25).  The Appeals Council denied Plaintiff's request for review on February 14, 2022.  (Tr. 1-4).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2018, the application date.  (Tr. 17).  At step two, the ALJ found that Plaintiff has the following severe impairments: autism disorder; obsessive-compulsive disorder; attention deficit deficit hyperactivity disorder; and anxiety disorder.  (Tr. 17).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-19).

Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform the full range of work at all exertional levels with the following additional limitations:

> limited to work environment with no more than moderate noise level; limited to simple work (as defined by the DOT as SVP ratings of 1 and 2) routine tasks in a work environment that is not fast paced or had strict production quotas (e.g. work that is goal based or measured by end results); limited to work with no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors in a job where changes in work setting or processes are few, if any, and any changes are explained in advance; and limited to jobs where the individual's job responsibilities are performed without close teamwork or tandem work.

(Tr.19-23).

At step four, the ALJ found that Plaintiff has no past relevant work.  (Tr. 23).  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 24-25).  Therefore, the ALJ found that Plaintiff is not disabled.  (Tr. 25).

IV.    _Plaintiff's Challenge_

Plaintiff argues that the case must be remanded because the ALJ improperly relied on Plaintiff's daily living activities to discount the medical opinions of Dr. Brenda Bierdeman, Psy.D., and Dr. Andrea Kudel, D.O.  The Court disagrees.

Plaintiff misconstrues or misinterprets the ALJ's decision.  The ALJ relied on much more than Plaintiff's daily activities in discounting the opinions of Drs. Bierdeman and Kudel.  Plaintiff makes no mention of the multiple medical opinions that supported the ALJ's conclusion on this issue. Psychologist Dr. Todd Deneen, Psy.D., performed a psychiatric evaluation of Plaintiff and opined that he would have no limitation in "sustain[ing] an ordinary routine and regular attendance at work." (Tr. 21, 307, _see also_ Tr. 71, 76). Dr. Adam Brownfeld, Ph.D., performed a vocational rehabilitation evaluation of Plaintiff and also found "no evidence of limitation in.....sustaining an ordinary routine and attendance at work." (Tr. 23, 324, 329-330, 414). Psychiatrist Dr. Jill Hamilton, Ph.D., remarked that he is "very good with routine," and does familiar routines "like clockwork." (Tr. 22, 336). The ALJ's conclusions were further supported by the underlying medical examination evidence and Plaintiff's own account of his daily functioning (such as attending college and participating in work programs). (Tr. 22, 250, 320). Plaintiff's brief omits any reference to these medical opinions and frames the ALJ's decision as based solely on his discussion of self-reported activities. This is inaccurate. The ALJ considered

more than just Plaintiff's self-reported activities[3]; multiple medical opinions all directly supported the ALJ's conclusion.

Here, various medical opinions indicated that Plaintiff could perform work consistent with the RFC. These opinions were consistent with the underlying medical evidence; all of which constitutes substantial evidence in support of the ALJ's decision. In assessing a claimant's RFC, the ALJ is tasked to consider all relevant medical and other evidence, including any statements about what Plaintiff can still do provided by any medical sources. *See* 20 C.F.R. §§ 416.945(a), 416.927(d)(2), 416.945(a)(3), 416.946(c). To this end, the ALJ possesses the authority to reject those portions of a medical opinion that are not supported by and even contrary to, the objective evidence of record, while accepting those portions that are supported by the record. *See Veino*, 312 F.3d at 588. Here, there were multiple medical opinions that supported the ALJ's decision that Plaintiff was not disabled. These medical opinions constituted substantial evidence in support of the administrative decision. 20 C.F.R. §§ 416.912(b)(6), 416.927(e)(2) (State agency medical consultants are highly qualified physicians who are also experts in the evaluation

---

[3] "It is well-settled that an ALJ may consider a claimant's activities of daily living when evaluating his credibility." *Ernest S. v. Comm'r of Soc. Sec.*, 22-CV-509, 2023 U.S. Dist. LEXIS 157582, at *7-8 (W.D.N.Y. Sept. 6, 2023). Indeed, courts routinely consider claimant's activities of daily living when assessing how to weigh their subjective statements as to their asserted disabling conditions. *Marrero v. O'Malley*, 22-CV-7982, 2024 U.S. Dist. LEXIS 58188, at *23-24 (S.D.N.Y. Mar. 28, 2024); *see, e.g., Aimee D.P. v. Comm'r of Soc. Sec.*, 22-CV-9988, 2023 U.S. Dist. LEXIS 228696, at *17 (S.D.N.Y. Dec. 22, 2023)("[e]vidence that a plaintiff is capable of participating in various activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work."); *Diaz v. Comm'r of the SSA*, 22-CV-2256, 2023 U.S. Dist. LEXIS 177135, at *15-16 (S.D.N.Y. Sept. 29, 2023) (approving ALJ's consideration of plaintiff's self-reported activities, including applying for jobs and attending vocational training, as evidence inconsistent with the medical opinions); *Selimaj v. Berryhill*, 17-CV-3389, 2019 U.S. Dist. LEXIS 54460, at *24 (S.D.N.Y. Mar. 29, 2019) (finding that the ALJ properly considered Plaintiff's work as a doorman, performance of household tasks, and use of public transportation "in accordance with SSA regulations, which provide that a 'claimant's daily activities are an appropriate factor to consider in assessing the credibility of a claim of disability.'"); *see also Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (summary order) (finding that ALJ did not err in declining to credit medical opinion that was inconsistent with the claimant's reported activities of daily living).

of the medical issues involved in disability claims under the Act); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (*citing Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993). Indeed, it is important to point out how consistent these three opinions were in describing Plaintiff's functioning. This was not a case where the medical opinions were all at odds with each other—these three opinions described a similar range of functioning.

Under the substantial evidence standard of review, it is not enough for Plaintiff to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute their own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Plaintiff complains that the ALJ's discussion of Dr. Bierdeman's and Dr. Kudel's opinions was insufficient.  However, the ALJ specifically considered their assessments regarding Plaintiff's ability to sustain a routine. (Tr. 22) ("Despite the problems noted by Drs. Bierdeman and Kudel with sustaining an ordinary routine, other reports indicate the claimant thrives on routines...." and citing significant medical evidence of record). The ALJ went on to explain that:

> [T]he opinions of Drs. Bierdeman and Kudel are not consistent with the record and thus are not persuasive (Ex. 13F and 15F). Mainly, the claimant relies on routines

throughout his day so it is inconsistent to say the claimant has extreme limitations in the ability to sustain an ordinary routine without special supervision (Exs. 13F/4). Even if he needs some reminders, the residual functional capacity provides for the opportunity for explanation of change… Details of the claimant's activities of daily living and personal care routines also show an individual capable of work consistent with the residual functional capacity (Exs. 3F and 7F). Finally, Dr. Kudel provides only conservative treatment in the form of medication management without noting any abnormalities in her treatment notes (Ex. 16F).

(Tr. 22). This was a proper analysis, and the ALJ's decision also contains lengthy discussions of Dr. Deneen's, Dr. Brownfeld's and Dr. Hamilton's reports, which support the RFC determination. (Tr. 22-23).

Plaintiff's argument rests on the faulty assumption that the ALJ did not consider the other medical evidence and medical opinions of record, when in fact the plain text of his decision makes clear that he did. (Tr. 19-23). In fact, the ALJ provided an explicit discussion of how he considered Plaintiff's ability to sustain a routine in light of all the medical evidence of record.

In sum, this matter revolves around the ALJ's inherent authority to resolve factual questions. As the Second Circuit has stated, "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (internal quotation marks and citations omitted). Because substantial evidence in the record supports the ALJ's determination, the ALJ's decision must be affirmed. *See DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (Commissioner's decision affirmed where substantial evidence for both sides).

## **CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No.

5) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 6) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 1, 2024
             Buffalo, New York

                                                    _____
                                                    MICHAEL J. ROEMER
                                                    United States Magistrate Judge